ST. PAUL, J., recused.

━━━━

(92 South. 588)

No. 23597.

**STEPHENSON v. BELLE HELENE CO–OP. SUGAR CO.**

(May 22, 1922. Rehearing Denied by Division A June 29, 1922.)

*(Syllabus by the Court.)*

I. **Nature of issues.**

Involves only issues of fact.

*(Additional Syllabus by Editorial Staff.)*

2. **Sales** ⬡⟲52(5)—**Evidence insufficient to show owner of sugar cane had sold it to brokers before delivery to defendant.**

In an action for a balance of the price of sugar cane delivered to defendant by plaintiff, which defendant had paid to brokers, claiming that they had previously bought the cane from plaintiff, evidence *held* insufficient to show any completed contract with the brokers.

Appeal from Twenty-Seventh Judicial District Court, Parish of Ascension; Philip H. Gilbert, Judge.

Action by J. W. Stephenson against the Belle Helene Co-operative Sugar Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Walter Lemann, of Donaldsonville, and J. H. Pugh, of Plaquemine, for appellant.

Howell, Wortham & Howell, of Thibodaux, for appellee.

By division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

ST. PAUL, J. [1] This case presents only a question of fact. There was judgment below in favor of plaintiff, and defendant appeals, but points out no manifest error in the finding of the judge and jury below, only a conflict of testimony, which, after all, is more apparent than real on material points.

[2] Plaintiff delivered to defendant 1,820 tons of sugar cane, which at the market price should have been paid for at $7.105 per ton. Defendant paid plaintiff only $6 per ton and paid the other $1.105 to a firm of brokers who claimed to have previously bought the cane for a flat price of $6 per ton. And the question is: Was there such a sale?

It is unnecessary to go into the conflicting evidence of plaintiff and his witnesses, on the one side, and the witnesses for defendant on the other, and which bears only on the question whether plaintiff did or did not declare to certain persons that he had sold the cane to the brokers aforesaid, and whether he did or did not say that "his word was as good as his bond," and that no written contract of sale was necessary. For the testimony of defendant's two principal witnesses does not conflict with the testimony of plaintiff on the main question, to wit, whether the contract was ever finally concluded, and shows affirmatively that plaintiff neither verbally nor in writing ever fully or finally consented to the sale. Thus:

By Mr. Leon Newman:

"* * * We met him (plaintiff) at Darrow, and I introduced myself to him, and he suggested that we go into Casso's and fix the matter up, and I told him it was agreeable. I explained everything to Mr. Stephenson, and he suggested that we draw it up in writing, which I did right at Casso's, stipulating the price and everything, and when I finished the contract I read the whole of it to him. He said that everything was satisfactory, but that, inasmuch as he had promised his crop to the Belle Helene Company, he wanted to find out from Mr. A. I. Picard if it was satisfactory to him, and he said if that was all right he would sign the contract, and he said even if he never signed the contract that his word was as good as his bond. * * *

"Q. Subsequent to that time did you ever have occasion to see Mr. Stephenson in regard to that same matter? A. Yes, sir; I. called on him at one time at his home at Burnside, La., and I had with me the original contract which I had drawn, and also the approval of Mr. A. I. Picard, and Mr. Stephenson said it was all right, the cane was ours, but he wanted to get the matter settled whether it was f. o. b. Burnside or f. o. b. factory, and I told him it was f. o. b. Burnside. He did not sign the contract for the reason he wanted to have it understood with the Belle Helene people."

By Mr. Leon Geismar:

"Q. Where did this conversation at Mr. Stephenson's residence take place? A. We first went into the hall, and then he said it was cooler on the porch, and we came out.

"Q. And the contract was not signed on that day, either? A. No, sir.

"Q. Did he bring a paper there that day? A. Yes, sir.

"Q. Did the contract specify where the cane was to be delivered? A. I don't know.

"Q. Do you know if there was any understanding at Darrow or at Mr. Stephenson's house about the freight? A. Yes, sir; at Mr. Stephenson's house there was some discussion.

"Q. Did you hear any discussion as to the place where this cane was to be delivered? A. They talked about going to Belle Helene."

Decree.

The judgment appealed from is therefore affirmed.

Rehearing refused by Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.